**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 26-mj-47** |
| **DEYON HAMPTON JR,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

On February 14, 2026, the defendant, Deyon Hampton Jr, threw what he called "dynamite" into what he knew was an occupied apartment. The object exploded, wounding one of the tenants with plastic shrapnel, and destroying the apartment in the ensuing fire. With complete and utter disregard for human life, the defendant risked the lives of not only the two tenants, but of several other people living in the apartment building, including a baby.

The evidence shows that the defendant poses an unmitigated danger to the public if released. The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(A) (offense enumerated in § 2332b(g)(5)) and 18 U.S.C. § 3142(f)(1)(E) (felony involving a destructive device), as the defendant, Deyon Hampton Jr, is charged with violating 18 U.S.C. § 844(i) (use of fire or explosive to damage a building affecting interstate commerce, resulting in personal injury). As described below, all four statutory factors in § 3142(g) strongly favor pretrial detention.

**I.  Factual and Procedural History**

On February 14, 2026, at 4:34 PM the District of Columbia Fire & EMS Department ("DCFD") and the Metropolitan Police District of Columbia ("MPD") responded to a report of an explosion and fire at an occupied apartment building in Northeast section of the District of

Columbia (hereinafter referred to as APARTMENT BUILDING). Fire suppression units responded and found a fire burning in an apartment within APARTMENT BUILDING (hereinafter referred to as VICTIM APARTMENT) and extinguished the fire, securing the scene with the assistance of MPD patrol units. The on-scene fire incident commander requested the assistance of the DCFD Fire Investigation Unit ("FIU").



*Figure 1: Still shot from police body worn camera of the burning apartment.*

Investigator Somers, a member of the National Capitol Region Arson & Explosives Task Force ("AETF"), responded to the incident with members of the FIU to assist with the fire scene examination.

2

Upon arrival, Investigator Somers met with the occupants of the VICTIM APARTMENT in the back of American Medical Response Ambulance 84, where they we being treated for injuries. Two individuals (hereinafter referred to as (V1) and (V2)) identified themselves as the tenants of the VICTIM APARTMENT and reported that they were both in the apartment at the time of the explosion and fire.

V1 reported that an explosion occurred before the fire was discovered near the electrical panel in the hallway of the VICTIM APARTMENT. V1 also showed Investigator Somers their left arm, which was injured. Investigator Somers noticed blood and a piece of plastic embedded in V1's left forearm. V1 reported that this injury was new, and the plastic was not embedded in their arm before the explosion and fire. V1 was subsequently transported by Ambulance 84 to MEDSTAR-Washington Hospital Center for treatment of their injuries, including the shrapnel in their left arm.



***Figure 2: Picture of V1's wound. The plastic shrapnel is embedded in the center of the wound.***



*Figure 3: photo of the piece of shrapnel after it was removed from V1's arm.*

V2 reported hearing an explosion and believed it was near the electrical panel, but was in the bedroom at the time the explosion occurred. V2 reported to Investigator Somers that V2 believed the explosion was from "dynamite" before being transported to MEDSTAR-Washington Hospital Center by Ambulance 84 for treatment of unspecified injuries.

A fire scene examination of the VICTIM APARTMENT was conducted by members of the FIU, in which Investigator Somers assisted and participated. Fire damage was largely isolated to the VICTIM APARTMENT, with some extension of fire into the attic space above the VICTIM APARTMENT. It was the opinion of the participating investigators that the fire originated in the hallway of the VICTIM APARTMENT, based on an analysis of fire damage patterns and the witness statements.



*Figure 4: Exterior Photo of the fire damage to the apartment.*



*Figure 5: Photo of the interior damage of the VICTIM APARTMENT.*



*Figure 6: Photo of interior damage of the VICTIM APARTMENT.*

The fire scene examination included a search for common causes of explosions and fire. The VICTIM APARTMENT did not have any natural gas fueled equipment in the apartment. No Lithium-Ion batteries, or remains of Lithium-Ion batteries were found. The electrical panel, and the service line to the panel, were both intact. A propane tank was found in the closet of the hallway, but the tank did not have any fire damage.



*Figure 7: Photo of interior damage of the VICTIM APARTMENT.*

During the examination, Investigator Somers began receiving text messages from V1. V1's message stated "I was just talking to my friend that was outside the building. He said the explosion happened and then the guy Deyon left out the building. He asked Deyon what happened, he smiled and said something like he got them. He tried to stop him and follow him but he got away." Additionally, V1 sent a picture of the person identified as "Deyon" to Investigator Somers.

During the examination of the VICTIM APARTMENT, additional members of the AETF responded to APARTMENT BUILDING to provide technical assistance and to augment the investigative resources of the DCFD. This group included a Senior Special Agent Bomb Technician/Certified Explosive Specialist ("SSABT/CES") of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").



*Figure 8: Photo of interior damage of the VICTIM APARTMENT.*

The SSABT/CES and Investigator Somers responded to MEDSTAR-Washington Hospital Center to conduct an additional interview with V1. During the interview, V1 recalled that "Deyon" and another male ("W1") had been hanging out in the VICTIM APARTMENT. V1's significant other, V2, was sleeping in the bedroom. V1 and Deyon had a conversation, during which Deyon displayed a solid-colored tube-shaped item, approximately 12 inches long and about 1 1/2 inches in diameter.[1] V1 could not recall the specific words that Deyon spoke, but he indicated that it was "dynamite." He then placed the "dynamite" in his pocket. As V1 began looking for a pair of shoes in a storage bin located in the hallway, W1 exited the VICTIM APARTMENT through the apartment door, located on V1's left side. Deyon then left the VICTIM APARTMENT through the same door. Almost immediately after Deyon's departure from the apartment, V1 felt and heard

---

[1] There was a typographical error in the complaint affidavit where this was listed as "11/2," but it properly should be read as 1 1/2 inches.

an explosion on V1's left side. V2, now awoken by the explosion, and V1 then tried to leave the VICTIM APARTMENT. V1 reported seeing flames in the area in front of the electrical panel and left side closet, as well as the area between the apartment door and where V1 had been looking through the storage bin when the explosion occurred. V2 then pushed V1 out of the apartment door as the flames were growing and spreading.



*Figure 9: Photo of interior damage of the VICTIM APARTMENT.*

V1 also identified that the plastic shrapnel embedded in V1's arm had been removed by hospital staff and had incurred abrasions to V1's left, leg hip and ankle during the explosion and subsequent fire. These injuries were treated by hospital staff before V1's discharge.

V1 was able to recall Deyon's full name, as well as his appearance and one of his tattoos. Investigator Somers queried law enforcement databases and found a subject matching this description. Later that day, a FIU Sergeant/Arson Investigator and Officer Somers, met with V1.

V1 reported that they frequently would see Deyon over the last year, that sometimes he would sleep in the VICTIM APARTMENT. Deyon's longest stay lasted almost a month. V1 was sure they would recognize a photograph of Deyon. Investigator Somers presented V1 with the most recent booking photograph of Hampton, which V1 immediately recognized and identified as "Deyon." During this interview, Investigator Somers misstated Deyon's last name as Howard. After the interview, V1 sent a text correcting his error, stating "And I remember his last name is actually Hampton, not Howard."

The explosion and subsequent fire caused significant damage to the APARTMENT BUILDING, with at least five occupants displaced due to the fire damage, and leaving the VICTIM APARTMENT uninhabitable.



*Figure 10: Photo of interior damage of the VICTIM APARTMENT.*



*Figure 11: Photo of interior damage of the VICTIM APARTMENT.*

A query of District of Columbia Government records, including the Office of Tax and Revenue and the Department of Buildings, list the APARTMENT BUILDING as having a Certificate of Occupancy permit for six apartment units. The property owner is listed as a Limited Liability Corporation registered in New Jersey, a business which affects interstate commerce.

On March 5, 2026, the defendant was charged by federal complaint with one count of violating 18 U.S.C. § 844(i) (use of fire or explosive to damage a building affecting interstate commerce, resulting in personal injury). On March 6, 2026, the defendant was arrested and brought to D.C. Superior Court on the following day. On March 9, 2026, the defendant made his initial appearance before this Court. A detention hearing is set for March 11, 2026, at 11:00 am.

## II.  Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal

trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

### 1.   The United States' States Bases for Detention

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A) (offense enumerated in § 2332b(g)(5)) and 18 U.S.C. § 3142(f)(1)(E) (felony involving a destructive device). As the defendant is charged with an offense enumerated in 18 U.S.C. § 2332b(g)(5), the presumption is that he should be detained pending trial. *See* 18 U.S.C. § 3142(e)(3)(C).

As the court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g).

### A.      The Nature and Circumstances of the Offenses Weigh in Favor of Detention

12

The nature of the defendant's conduct is serious and weighs heavily in favor of pretrial detention in this case. The defendant is charged with throwing a device into what he knew was an occupied apartment, which exploded, wounding one of the tenants, destroying the apartment, and endangering the lives of everyone in the building, including a baby. Even worse, the defendant threw this device into an apartment containing people who thought he was their friend. The defendant's callous disregard for human life demonstrates the need for his pretrial detention.

Congress has demonstrated just how seriously it takes this offense, applying a five year mandatory minimum without injury or death, and a seven year mandatory minimum with injury or death, as well as a maximum penalty of 40 years of incarceration. *See* 18 U.S.C. § 844(i); *United States v. Brown*, 538 F. Supp. 3d 154, 167 (D.D.C. 2021) ("These substantial terms of imprisonment reflect Congress' appreciation for the severity of these offenses."). As the presumption in these cases is for detention, it is unsurprising that judges of this court have consistently detained defendants charged with this offense pending trial – even when the explosive did not go off. *See United States v. Cole*, 26-cr-1 (AHA), ECF no. 28 at *19 ("[E]ven assuming [the defendant] came forward with sufficient evidence to rebut th[e] presumption, Congress's substantive judgment in favor of preventive detention in this case remains a factor in the Court's Analysis, and one that should receive substantial weight." (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) (Friedman, J.)); *see also United States v. Pace*, 20-cr-104 (RC); *United States v. Grabinski*, 22-cr-221 (RJL), 25-cr-19 (RJL).

**B.**     **The Weight of the Evidence Against the Defendant Favors Pretrial Detention**

The weight of the evidence against the defendant also weighs heavily in favor of pretrial detention. The weight of the evidence should be considered equally with the other § 3142 factors.

In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in this case, the weight of the evidence increases the prospect that the defendant will present a danger to the community if released.

The defendant was well-known to the victims in this case, and he even showed the "dynamite" to at least one of the victims prior to throwing it into the apartment. Although the victims did not actually see the defendant throw the device, the explosion happened just after the defendant left and came from the area from which he left. Further, a witness who saw the defendant outside the apartment building just after the explosion asked the defendant what happened.

According to the witness, the defendant smiled and said something like he "got them" before leaving the area. All told, the evidence is strong in this case and weighs heavily in favor of detention.

### C.      The Defendant's History and Characteristics Weigh in Favor of Detention

The third factor—the history and characteristics of the defendant favors detention. The defendant has at least one prior criminal conviction, for an assault in Rockingham County, VA General District Court case number GC1200031000-900 in 2012. The defendant was originally charged in this case for an assault with malicious injury under Virginia Code § 18.2-51. The defendant pled to a misdemeanor assault and was sentenced to 30 days fully suspended. Additionally, the defendant has seven prior arrests. Although the defendant's sole conviction was for a misdemeanor, it is notable that it was for a violent offense. The fact that the defendant's behavior has now escalated to arson, is highly concerning. As such, this factor weighs in favor of pretrial detention.

### D.      The Danger to the Community Created by Defendant's Release Weighs in Favor of Detention

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention. The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the court does

not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here, the defendant poses an obvious and articulable threat to the community as evidenced by the fact that he threw "dynamite" into what he knew was an occupied apartment. This device exploded, wounded a tenant, destroyed the apartment, and risked the lives of all occupants in the apartment building, including a baby. It is a miracle that he did not kill anyone.

## III.  Conclusion

The government respectfully requests that the court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


By:    /s/ *David B. Liss*
      DAVID B. LISS
      Assistant United States Attorney
      D.C. Bar No. 90017629
      United States Attorney's Office
      601 D Street, N.W.
      Washington, D.C. 20530
      Telephone: 202-680-4025
      Email: David.liss2@usdoj.gov
